UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL KRZEMINSKI,  **REPORT AND**
DAVID DURMAJ,  **RECOMMENDATION**

       Plaintiffs,

v.  17-CV-00245(LJV)(JJM)

CITY OF BUFFALO, JAKO MONDAL,
JOSHUA CRAIG, a/k/a JOSEPH CRAIG,
MARK CYREK, and PAUL ROBERTS,

       Defendants.
_____

    Plaintiffs allege in this 42 U.S.C. §1983 action that their First, Fourth and Fourteenth Amendment rights were violated when defendants, City of Buffalo Police Department officers, responded to a March 22, 2014 911 hang-up call from plaintiff Michael Krzeminski's residence, which resulted in plaintiff Krzeminski's arrest and criminal prosecution and plaintiff David Durmaj's detention. Complaint [1]. Before the court is defendants' motion [23] for dismissal pursuant to pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) and 12(c) and/or summary judgment pursuant to Rule 56,[1] which has been referred to me by District Judge Lawrence J. Vilardo for initial consideration [10]. Having reviewed the parties' submissions [23, 28, 29], I recommend that the motion be granted in part and denied in part.

## BACKGROUND

    On the evening of March 22, 2014 several individuals, including plaintiffs, plaintiff Krzeminski's girlfriend, Kelly York, and nephew, Jeremiah Krzeminski, were drinking alcohol in

---

[1]  Bracketed references are to the CM/ECF docket entries, and page references are to numbers reflected on the documents themselves rather than to CM/ECF pagination.

the downstairs apartment of 36 Leamington Place in Buffalo, New York.  Defendants' Statement of Undisputed Material Facts [23-3], ¶¶3, 4.  At some point, Ms. York called 911 because she "was angry" that plaintiff Krzeminski "stopped serving [her] vodka", but hung up before the call was completed.  York Affidavit [28-2], ¶2.  Shortly thereafter, defendant Officers Jako Mondal and Joshua Craig responded in uniform to the hang-up call. Defendants' Statement of Undisputed Material Facts [23-3], ¶¶6, 7; Craig deposition transcript [23-7], pp. 16-17 of 43 (CM/ECF). Plaintiff Krzeminski answered the door.  Defendants' Statement of Undisputed Material Facts [23-3], ¶9. Thereafter, the parties' accounts diverge.

According to Officer Mondal, plaintiff Krzeminski was screaming at the officers (Mondal deposition transcript [23-6], pp. 23-24 of 57 (CM/ECF)), an allegation denied by plaintiffs. Krzeminski Affidavit [28-2], ¶8; Durmaj Affidavit [28-2], ¶6.  Officer Craig testified that they entered the residence because Ms. York appeared to be in distress. Craig deposition transcript [23-7], p. 14 of 43 (CM/ECF).  However, plaintiffs state that the officers could not even observe Ms. York from their vantage point, and threatened that if plaintiff Krzemski did not let them into the residence, that he was going to jail.  Krzeminski Affidavit [28-2], ¶9; Durmaj Affidavit [28-2], ¶7; Durmaj deposition transcript [23-5], pp. 23-24 of 40 (CM/ECF).  Defendants contend that plaintiffs became "hostile and confrontational" and were "posturing themselves in an aggressive manner" to prevent them from talking to Ms. York. Craig deposition transcript [23-7], p. 16 of 43 (CM/ECF). Plaintiffs' conduct so concerned the officers that they radioed for additional assistance.  Id.  This too is denied by plaintiffs, who state that plaintiff Krzeminski "responded to [the officers] questions and allegations and [the officers] got aggressive and hostile in response".  Krzeminski Affidavit [28-2], ¶10; Durmaj Affidavit [28-2], ¶8.

Plaintiff Krzeminski was handcuffed based on the officers' safety concerns and taken out onto the front porch of the residence with Officer Craig. Craig deposition transcript [23-7], p. 20 of 43 (CM/ECF); defendants' Statement of Undisputed Material Facts [23-3], ¶11. Plaintiff Dumaj remained in the residence while the officers talked with Ms.York, but based on their belief that he was interfering in the investigation (an allegation plaintiff Durmaj denies), he was told to go outside by defendant Officer Mark Cyrek, where he was briefly questioned by officers before being placed into the back of a patrol vehicle for 30 minutes. He did not know whether he was locked in the vehicle. Durmaj deposition transcript [23-5], pp. 24-26 of 40 (CM/ECF); defendants' Statement of Undisputed Material Facts [23-3], ¶11;  Durmaj Affidavit [28-2], ¶10.  Plaintiff Durmaj was not handcuffed,[2] searched or told that he was under arrest, and acknowledges that he had access to his cell phone throughout. Defendants' Statement of Undisputed Material Facts [23-3], ¶13.  He was never formally arrested or charged criminally.  Defendants' Statement of Undisputed Material Facts [23-3], ¶13.

Officers Mondal and Craig state that during their questioning of Ms. York, she reported being choked by plaintiff Krzeminski, which was confirmed by their observations of redness and scratches on her neck.  Mondal deposition transcript [23-6], pp. 28-30 of 57 (CM/ECF); Craig deposition transcript [23-7], pp. 29-31 of 43.  Ms. York denies this, and instead states: "The police arrived and tried to convince me to accuse Mr. Krzeminki of assaulting or choking me . . . . I refused to do so and in fact, he did not assault me, strike me, hit me or choke me or threaten to do any of these things". York Affidavit [28-2], ¶¶3, 4. As for any physical evidence of her being choked, Ms. York states that she has a skin condition which results in some redness around her face.

---

[2]     Although the parties appear to agree that plaintiff Durmaj was handcuffed (defendants' Statement of Undisputed Facts [23-3], ¶13), he denied that occurred. Durmaj deposition transcript [23-5], p. 26 of 40 (CM/ECF).

York Affidavit [28-2], ¶7.  Plaintiff Durmaj also denies observing any signs that Ms. York was choked or struck.  Durmaj Affidavit [28-2], ¶9.

Ms. York refused to sign any complaint against plaintiff Krzeminski. York Affidavit [28-2], ¶5; Craig deposition transcript [23-7], 31-32 of 43 (CM/ECF).  According to Officer Mondal, Ms. York stated that she was unwilling to do so because plaintiff Krzeminski was her landlord, and she did not want to be evicted. Mondal deposition transcript [23-6], p. 48 of 57 (CM/ECF).  Notwithstanding Ms. York's unwillingness to press charges, plaintiff Krzeminski was arrested and charged with assault and harassment based on her statements to the officers. Defendants' Statement of Undisputed Material Facts [23-3], ¶15; 23-10, pp. 4-5 of 8 (CM/ECF). After plaintiff Krzeminski was arrested, plaintiff Durmaj was let out of the police vehicle, and informed that he was could return home. Id., ¶18.  Neither of the plaintiffs were physically injured during this encounter. Id., ¶¶19, 20. Plaintiff Krzeminski was released on bail and at his second court appearance on the charges, they were dismissed when Ms. York informed the District Attorney's Office that plaintiff Krzeminski did not do anything.  Id., ¶¶21-23.

As a result of this conduct, plaintiffs assert claims against all defendants for false arrest, failure to intervene, and assault and battery.  Complaint [1], First-Seventh and Ninth-Tenth Causes of Action.  Plaintiff Krzeminski also alleges a claim for malicious prosecution (id., First Cause of Action) and plaintiff Durmaj asserts a claim for a violation of his free speech rights. Id., Eighth Cause of Action.

## DISCUSSION

**A.     Summary Judgment Standard**

Since both parties have submitted affidavits and rely upon materials outside the pleadings, I will treat defendants' motion as one for summary judgment pursuant to Rule 56, rather

- 4 -

than a motion to dismiss under Rule 12(b)(6) or 12(c). *See* Askir v. Brown & Root Servs. Corp., 1997 WL 598587, *1 (S.D.N.Y. 1997); Manbeck v. Micka, 640 F. Supp. 2d 351, 387 n. 1 (S.D.N.Y. 2009) (where "[d]efendants . . . made a motion to dismiss pursuant to Rule 12(b)(6) and/or 12(c) . . . and/or a motion for summary judgment pursuant to Rule 56" the court addressed the motion as a motion for summary judgment).

"Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

**B.      Claims against the Individual Defendants in their Official Capacities.**

Defendants argue that "[t]o the extent that Plaintiffs seek to sue the individually named Defendants in their official capacity, such claims must be dismissed." Defendants' Memorandum of Law [23-1], p. 8 n. 1. I agree. Since "a suit against a governmental officer in his official capacity is the same as a suit against the entity of which the officer is an agent", McMillian v. Monroe County, Alabama, 520 U.S. 781, 785 n. 2 (1997), I recommend that the official capacity claims be dismissed as duplicative of the claims against the City of Buffalo. *See* Kennedy v. City of Albany, 2015 WL 6394513, *5 (N.D.N.Y. 2015).

### C.     Claims against the City of Buffalo

"A municipality cannot be held liable under § 1983 on a *respondeat superior* theory . . . . Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 691, 694 (1978).   A policy or custom may be established by "1) an express policy or custom, 2) an authorization of a policymaker of the unconstitutional practice, 3) failure of the municipality to train its employees, which exhibits a 'deliberate indifference' to the rights of its citizens, or 4) a practice of the municipal employees that is 'so permanent and well settled as to imply the constructive acquiescence of senior policy-making officials.'" Biswas v. City of New York, 973 F. Supp. 2d 504, 536 (S.D.N.Y. 2013) (*quoting* Pangburn v. Culbertson, 200 F.3d 65, 71-72 (2d Cir. 1999)).

Defendants argue that the individual defendants were not policymakers, and that "[t]he record is devoid of any evidence of any specific policy or custom from which any alleged constitutional harm flowed to either Plaintiff". Defendants' Memorandum of Law [23-1], pp. 11-12. In response, plaintiffs focus solely on the Monell liability for their false arrest claims, arguing that "all the defendants testified that detention of witnesses was allowed by either their training or by practice". Plaintiffs' Memorandum of Law [28], p. 3 of 4 (CM/ECF).  For example, they point to the testimony of Officer Mondal that "investigative detentions are allowed according to his training". Id.

However, the policy of permitting investigative detentions is not facially unconstitutional. As defendants note (defendants' Memorandum of Law [23-1], p. 20), "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable

suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause." Moody v. Town of Greenburgh, 2012 WL 1174754, *3 (S.D.N.Y. 2012). "[E]ven absent particularized reasonable suspicion, innocent bystanders may be temporarily detained where necessary to secure the scene of a valid . . . arrest and ensure the safety of officers and others." Bletz v. Gribble, 641 F.3d 743, 755 (6th Cir. 2011). It is only "[i]f the totality of circumstances indicates that an encounter has become too intrusive to be classified as an investigative detention, the encounter is a full-scale arrest, and the government must establish that the arrest is supported by probable cause." Posr v. Doherty, 944 F.2d 91, 98 (2d Cir. 1991).

Where, as here, plaintiffs seek "to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights", they "must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences . . . . A showing of simple or even heightened negligence will not suffice." Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 407 (1997). No such showing has been made here. Plaintiffs' isolated experience is not sufficient to support a Monell claim. Therefore, I recommend that the claims against the City of Buffalo be dismissed.

**D.    Plaintiff Krzeminski's False Arrest and Malicious Prosecution Claims**

The existence of probable cause presents a "total defense" to claims of false arrest and malicious prosecution. Stansbury v. Wertman, 721 F.3d 84, 89 (2d Cir. 2013).[3] Defendants argue that Ms. York's report that plaintiff Krzeminski choked her and their corroborating observations of visible marks to her neck established probable cause for his arrest and prosecution.

---

[3]    Probable cause in the malicious prosecution context is "evaluated in light of facts known or believed at the time the prosecution is initiated, rather than at the time of arrest". Clark v. City of New York, 2015 WL 5719612, *9 (E.D.N.Y. 2015). Here, there is no claim that the officers learned additional information after the arrest that established probable cause for the initiation of the prosecution.

Defendants' Memorandum of Law [23-1], pp. 17-20.  However, for purposes of this motion, I must credit Ms. York's version of events that the officers tried to convince her to accuse plaintiff Krzeminski of assault, when in fact no assault occurred, an account at least partially corroborated by plaintiff Durmaj, who denies observing any assault or that Ms. York showed any signs of being choked.  York Affidavit [28-2], ¶¶3-4; Durmaj Affidavit [28-2], ¶¶3, 9.

    I recognize, as defendants argue, that recantation is not unusual in domestic violence cases.  Defendants' Reply Memorandum of Law [29], p. 8 (*citing* United States v. Carthen, 681 F.3d 94, 102 (2d Cir. 2012) ("witness recantations are viewed with the utmost suspicion")).  That may very well be what transpired here, but resolution of that question is better left for the jury, since the court must "eschew credibility assessments", and afford every favorable inference to plaintiffs on this motion.  Amnesty America v. Town of West Hartford, 361 F.3d 113, 122 (2d Cir. 2004).  *See* Armstrong v. Maloney, 2012 WL 567427, *6 (N.D. Ill. 2012) ("[a]lthough it is unfortunately true that victims of domestic violence commonly recant truthful accusations . . . when viewed in Plaintiffs' favor, the Court must evaluate the officers' motion by crediting Dunlap's denial that she accused Hodges").  *But see* Jimenez v. City of New York, 2015 WL 5638041, *2-3, 6-7 (S.D.N.Y. 2015) (refusing to credit a victim affidavit that no assault occurred, where the victim initially gave a statement to law enforcement that she was assaulted by her husband, which was confirmed by the cotemporaneous medical records, but recanted that statement four days later at the time of her husband's arrest).

    Defendants further argue that plaintiffs' affidavits should be "disregarded to the extent that . . . [they] amend or contradict previously sworn testimony".  Defendants' Reply Memorandum of Law [29], p. 6.  Though I agree with defendants that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by

omission or addition, contradicts the affiant's previous deposition testimony", Hayes v. New York City Department of Corrections, 84 F.3d 614, 619 (2d Cir. 1996), they identify no specific contradictory testimony, and it is not "this Court's responsibility to . . . make counsel's arguments for them". Flores v. Tryon, 2017 WL 3705124, *3 n. 4 (W.D.N.Y. 2017).

Alternatively, defendants rely on qualified immunity for dismissal of these claims. "A police officer is entitled to qualified immunity from liability for his discretionary actions if either (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act" – *i.e.*, "arguable probable cause". Simpson v. City of New York, 793 F.3d 259, 268 (2d Cir. 2015).

Crediting plaintiffs' version of events that plaintiff Krzeminski was not interfering in the investigation and that defendants essentially concocted the charges against him, I am unable to conclude that defendants' actions were not in violation of the constitution, or that it was objectively reasonable for defendants to belief that their conduct was lawful. *See* Id. at 268-69; Frederique v. County of Nassau, 168 F. Supp. 3d 455, 479 (E.D.N.Y. 2016) ("summary judgment on qualified immunity grounds is inappropriate where genuine issues of fact preclude a finding that an officer's actions were objectively reasonable"). Therefore, I recommend that this portion of defendants' motion be denied.

**E.   Plaintiff Durmaj's False Arrest Claim**

"[D]epending on the circumstances, it is not constitutionally unreasonable for an officer, while attempting to arrest his actual suspect, also to detain third parties in order to secure the scene and protect his own safety. . . .  The reasonableness of a particular encounter depends in

turn on the exten[t] of the intrusion as well as the reason for the restraint." United States v. Howard, 2012 WL 5389673, *5 (W.D. Wis.), adopted, 2012 WL 5389663 (W.D. Wis. 2012), aff'd, 729 F.3d 655 (7th Cir. 2013).

Defendants acknowledge that "there is no requirement that an arrest be formally made to assert a false arrest claim" (*citing* Posr, 944 F.2d at 98), but argue that the brief and unintrusive detention was justified since the officers "had a reasonable concern that Plaintiff Durmaj was attempting to interfere because he postured himself in between the officers and Ms. York . . . and told an officer that he wanted to listen to the conversation between Ms. York and officers". Defendants' Memorandum of Law [23-1], pp. 20-21.  In response, plaintiff Dumaj disputes the alleged justification for his detention, denying that he was interfering with the investigation.  Durmaj Affidavit [28-2], ¶8.  Without any other justification offered by defendants for plaintiff Dumaj's 30-minute detention, triable issues of fact exist as to whether that detention was reasonable.  Those issues of fact also preclude defendants' reliance on qualified immunity. *See* Simpson, 793 F.3d at 268-69.  Therefore, I recommend that this portion of defendants' motion be denied.

**F.      Plaintiff Durmaj's First Amendment Claim**

To establish a First Amendment retaliation claim a plaintiff must prove: "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right". Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001).

Defendants challenge the first and third elements by arguing that "[t]here is no evidence that [plaintiff Durmaj] was engaged in any protected speech that was infringed by defendant officers". Defendants' Memorandum of Law [23-1], p. 25. I disagree. "[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers". City of Houston, Texas v. Hill, 482 U.S. 451, 461 (1987). Even "provocative and challenging" speech directed at police officers is protected, unless it is "likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest". Id. Accepting for purposes of this motion that plaintiff Durmaj was merely "trying to explain to the police what had happened" (Durmaj Affidavit [28-2], ¶11), his speech was plainly protected.

Moreover, "where defendants have not established probable cause for the arrest, plaintiffs need not establish that their free speech rights were 'actually chilled' by defendants' actions in order for their claims to survive summary judgment". Genia v. New York State Troopers, 2007 WL 869594, *23 (E.D.N.Y. 2007). Plaintiff Durmaj's "expressive activity was not merely chilled, but was rather completely frustrated for the period of his arrest. While, to be sure, 'governmental action which falls short of a direct prohibition on speech may violate the First Amendment by chilling the free exercise of speech,' here [plaintiff] alleges the more axiomatic 'direct prohibition,' thereby fulfilling the requirement to allege that his speech rights were infringed." Rodriguez v. Winski, 973 F. Supp. 2d 411, 427 (S.D.N.Y. 2013). *See* Lederman v. Adams, 45 F. Supp. 2d 259, 269 (S.D.N.Y. 1999), aff'd, 216 F.3d 1072 (2d Cir. 2000) ("Adams's actions had an immediate and specific chilling effect on plaintiff in that upon arrest he was unable to continue his demonstration and his First Amendment activities were cut short"). Therefore, I recommend that this portion of defendants' motion be denied.

### G.     Plaintiffs' Assault and Battery Claims

Although plaintiffs have asserted assault and battery claims as constitutional violations (Complaint [1], Fourth-Fifth and Ninth-Tenth Causes of Action), these are generally understood to be state law claims.  See Foster v. Haage, 1987 WL 16979, *2 (S.D.N.Y. 1987) ("assault or battery under color of state law will not, in an of itself, state a constitutional claim").  In any event, since "the elements for a claim of assault and battery against law enforcement officers under New York law and a claim of excessive force under § 1983 are the same", Boyler v. City of Lackawanna, 287 F. Supp. 3d 308, 326 (W.D.N.Y. 2018), I have treated plaintiffs' claims as Fourth Amendment excessive force claims.  See Defendants' Memorandum of Law [23-1], p. 23 n. 2.

Claims of excessive force during the course of an arrest or investigatory stop are analyzed "under the Fourth Amendment's objective reasonableness test, paying 'careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Hayes v. New York City Police Department, 212 Fed. App'x 60, 61–62 (2d Cir. 2007) (Summary Order).

Defendants argue that "[t]here is no evidence that any force was used during the arrest of Plaintiff Krzeminski, nor detention of Plaintiff Durmaj", and both plaintiffs "deny being injured or requiring any medical treatment".  Defendants' Memorandum of Law [23-1], p. 24. Plaintiffs fail to respond to this argument and point to no evidence establishing that the force used in connection with their arrest and detention was objectively unreasonable under the circumstances. Therefore, I recommend that these claims be dismissed.

### H.        Plaintiffs' Failure to Intervene Claims

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." Terebesi v. Torreso, 764 F.3d 217, 243 (2d Cir. 2014). "To establish such a claim of failure to intervene, a plaintiff must prove the following four elements: (1) that a constitutional violation was being committed against the plaintiff; (2) that the officer knew, or deliberately ignored, the fact that the constitutional violation was going to be, or was being, committed; (3) that the defendant had a reasonable opportunity to intervene and prevent the harm; and (4) that the defendant did not take reasonable steps to intervene." Thomas v. City of Troy, 293 F. Supp. 3d 282, 296 (N.D.N.Y. 2018).

Defendants argue that "[b]ecause there was no Constitutional violation, there was no reason for any of [them] to intervene". Defendants' Memorandum of Law [23-1], pp. 22-23. Since I have concluded that triable issues of fact exist concerning at least some of plaintiffs' alleged constitutional violations, I recommend that plaintiffs' related failure to intervene claims also not be dismissed.

### CONCLUSION

For these reasons, I recommend that defendants' motion for dismissal and/or summary judgment [23] be granted to the extent that it seeks dismissal of the City of Buffalo, plaintiffs' official capacity claims, and the assault and battery causes of action, but otherwise be denied. Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the clerk of this court by December 24, 2018.

Any requests for extension of this deadline must be made to Judge Vilardo. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985). Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: December 10, 2018

      /s/ Jeremiah J. McCarthy
      JEREMIAH J. MCCARTHY
      United States Magistrate Judge